UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
LUKE BROWN,

               Plaintiff,

       - against -            **MEMORANDUM AND ORDER**
                             24 Civ. 3807 (NRB)
DOLCE & GABBANA USA INC., UNXD, INC.,
BLUEBEAR ITALIA S.R.L.,

               Defendants.
-------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Plaintiff Luke Brown brings this action against three defendants scattered across the globe: (1) Dolce & Gabbana USA Inc. ("D&G USA"), a Delaware corporation, (2) UNXD, Inc. ("UNXD"), a Dubai corporation, and (3) Bluebear Italia S.R.L., an Italian corporation. ECF No. 15 ("AC") ¶¶ 38-40. Plaintiff, on behalf of a putative class, alleges that defendants advertised, promoted, and sold digital assets, or "Non-Fungible Tokens" ("NFTs"), but then failed to deliver the benefits they promised. Id. ¶¶ 1, 2.

    D&G USA, the sole American defendant and the only defendant to be served, moves to dismiss plaintiff's amended complaint. ECF No. 27. D&G USA argues that it is incorrectly named in the amended complaint, as it never advertised, promoted, or sold the relevant NFTs. ECF No. 28. According to D&G USA, plaintiff's allegations refer to its Italian parent company, Dolce & Gabbana S.R.L. ("D&G

-1-

S.R.L."),[1] which did enter into a joint venture in relation to the relevant NFTs.  Id.  However, D&G USA maintains that it cannot be haled into court for D&G S.R.L.'s alleged conduct.  ECF Nos. 27, 28.

For the following reasons, the Court grants D&G USA's motion to dismiss.

## BACKGROUND

### I.  Factual Background

The facts set forth below are drawn from the well-pleaded allegations in plaintiff's amended complaint and are accepted as true for purposes of this motion.  See Wilson v. Dynatone Publ'g Co., 892 F.3d 112, 117 (2d Cir. 2018).

### a. Alleged Scheme

Plaintiff alleges that defendants "jointly created and marketed the 'DGFamily'—a digital asset project . . . —which was used to sell digital assets" or NFTs.  AC ¶ 2.[2]  As part of the alleged scheme, plaintiff claims that defendants "marketed

---

[1]    Despite referring to D&G S.R.L. as a "defendant" at various points in his amended complaint, AC ¶¶ 34, 37, plaintiff did not include D&G S.R.L. in the caption of his amended complaint, id.; see also ECF No. 32 (same in opposition), and did not identify D&G S.R.L. as a defendant on the docket.  Service has not yet been effectuated on D&G S.R.L., see ECF No. 32 at 1 n.1, and defense counsel notes that this Court may not have jurisdiction over D&G S.R.L. at all, see ECF No. 28 at 4-5 n.4.  For the purposes of this opinion, it is immaterial whether D&G S.R.L. is a proper defendant in this action.

[2]    UNXD announced the launch of DGFamily Products on February 20, 2022, and "Dolce & Gabbana and UNXD began selling their DGFamily Products" on April 24, 2022.  AC ¶¶ 45, 47.

DGFamily Products to purchasers by falsely claiming that, in exchange for transferring cryptocurrency to buy a DGFamily Product, purchasers would later receive benefits, including, among other things, digital rewards, physical products, and exclusive access to events, along with the support of an online ecosystem to use and market DGFamily Products." Id. ¶ 10.

However, plaintiff contends that, "[o]nce the purchasers' funds [we]re used to purchase the NFTs, the developers abruptly abandon[ed] the project and fail[ed] to deliver the promised benefits all while fraudulently retaining the purchasers' funds." Id. ¶ 9; see also id. ¶¶ 48, 51, 70, 71 (similar).[3] According to plaintiff, defendants made "false and materially misleading statements" regarding DGFamily in "press releases," on defendants' "websites," and via "postings on social media websites such as Twitter." Id. ¶ 16.

In February 2024, "Defendants made the business decision to forgo an expensive and time-consuming process to complete the

---

[3]    Specifically, plaintiff claims that "UNXD announced the first of the eight benefits, or the first drop, on June 10, 2022, [] 13 days after they had originally promised to release it," and then failed to release the drop until June 17, 2022.  AC ¶ 53.  Plaintiff further alleges that this drop was not useable until June 28, eleven days after its release.  Id. ¶¶ 53, 54.

Additionally, as pled in the operative complaint, "[t]he second drop occurred on July 30, 2022, when Dolce & Gabbana and UNXD sent passes to order Dolce & Gabbana clothing to investors—around 50 days overdue." Id. ¶ 56.  In May and June 2023, defendants announced that the third set of benefits were "arriving around the world," but plaintiff alleges that many of defendants' "investors/customers" did not receive them or had to pay "triple digit bills in USD for" unexpected fees.  Id. ¶¶ 67, 68.

DGFamily project or support it." Id. ¶ 70. As a result, plaintiff allegedly lost $5,800. Id. ¶ 36.

### b. D&G USA's Alleged Involvement

Plaintiff's amended complaint contains 221 paragraphs, but only seven specifically mention D&G USA. AC ¶¶ 2, 33, 34, 37, 38, 41, 44. Instead, plaintiff refers to both D&G USA and D&G S.R.L. as "Dolce & Gabbana" because, according to the complaint, they "are effectively the same company," and D&G USA is the "alter-ego" of D&G S.R.L. Id. ¶¶ 2, 33, 34.

The Court reproduces here the seven allegations which specifically refer to D&G USA:

- "Using the 'Dolce & Gabbana,' brand begun and owned by Defendant Dolce & Gabbana S.R.L. and its alter-ego Dolce & Gabbana USA Inc. (jointly 'Dolce & Gabbana[']'), Defendants jointly created and marketed the 'DGFamily[.]'" Id. ¶ 2.

- "Plaintiff alleges Dolce & Gabbana USA Inc. is the alter-ego of its parent corporation Dolce & Gabbana S.R.L. and they operate as a joint entity because (a) Dolce & Gabbana USA Inc. functions at the absolute direction of Dolce & Gabbana S.R.L. in conducting their business of designing, producing, and marketing luxury clothing and accessories, (b) all of the business of Dolce & Gabbana USA Inc. and Dolce & Gabbana S.R.L. is directed by their shared CEO Alfonso Dolce, (c) prices for goods by Dolce & Gabbana USA Inc. and Dolce & Gabbana S.R.L. are determined by their shared CEO Alfonso Dolce, (d) the corporate formalities between Dolce & Gabbana USA Inc. and Dolce & Gabbana S.R.L. are rarely followed, if at all, and the entities only present themselves as "Dolce & Gabbana" to the public (e) the capitalization of Dolce & Gabbana USA Inc. is established at the sole direction and whim of Dolce & Gabbana S.R.L., (f) Bloomberg describes the USA entity is operating as merely the

-4-

online store for Dolce & Gabbana products, (g) the Dolce & Gabbana website is listed as owned by the Italian entity but uses the American '.com' domain, as does its customer service email, (h) the Dolce & Gabbana website lists jobs for all Dolce & Gabbana entities, and (i) their shared CEO Alfonso Dolce publicly refers to Dolce & Gabbana's plans in the United States as part of the Italian fashion house's direct business—singularly referring to Dolce & Gabbana for all of their business activities." Id. ¶ 33.

- "Defendants Dolce & Gabbana USA Inc. and Dolce & Gabbana S.R.L. are effectively the same company and are treated as such throughout the remainder of the Complaint besides to delineate which employees of each entity are already known to be involved in the scheme and their relevant jurisdictional information." Id. ¶ 34.

- "Defendant Dolce & Gabbana S.R.L. is a company formed under the laws of Italy with a registered office at Via Carlo Goldoni 10, 20129 Milan, Italy. Upon information and belief, Dolce & Gobbana S.R.L. owns Defendant Dolce & Gabbana USA Inc. (jointly, ('Dolce & Gabbana'). Dolce & Gabbana S.R.L. is an international renowned fashion company that i [sic] joined into a cryptocurrency related scam with Defendant UNXD." Id. ¶ 37.

- "Defendant Dolce & Gabbana USA Inc. is a Delaware corporation with its principal place of business at 546 5th Ave, New York City, New York 10036-5000. It does not have a registered agent listed, and instead lists its CEO Alfonso Dolce as the agent for service, to be served at 546 5th Ave, New York City, New York 10036-5000. Mr. Dolce is Domenico Dolce's brother, and Domenico Dolce is one of the founders and owners of Dolce & Gabbana S.R.L." Id. ¶ 38.

- "For Inbetweeners and Dolce & Gabbana S.R.L. (if it is not found to be the alter-ego of Dolce & Gabbana USA Inc.), Italy is a party to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters." Id. ¶ 41.

- "Upon information and belief, employees from both Dolce & Gobbana [sic] S.R.L. and Dolce & Gabbana USA Inc. participated in the alleged NFT scheme. Employees from

Dolce & Gabbana S.R.L. who participated include at least Christian Barbujani, the Global Innovation Manager; Davide Sgherri, Head of New Media; Davide Veneri, Head of Global Retail Sales; and Simone Pezzo, Web3 and AI Innovation. Domenico Dolce, the CEO of both Dolce & Gobbana [sic] S.R.L. and Dolce & Gabbana USA Inc., lauded the project upon announcement, while Simone Marchetti, a Merchandising Director ostensibly employed by the Italian entity but operating out of the New York office throughout at least the relevant period, supported the project and communicated with investors. Employees from Dolce & Gabbana USA Inc. who participated include at least Ruggero Caterini, Chief Operating Officer at Dolce & Gabbana USA; Sergio Tagliapietra, Vice-President of Information Technology; and Diana Cabanzo, Marketing Vice President. These individuals from both Dolce & Gabbana entities were involved in managing, marketing, and/or designing various parts of the project turned scheme based on their roles. Because Defendants communicated over Discord through company or anonymous accounts, other employees of each Defendant may be involved." Id. ¶ 44.

## II.  Procedural History

Plaintiff filed his initial complaint on May 16, 2024. ECF No. 1. Following the parties' pre-motion letters regarding D&G USA's anticipated motion to dismiss, ECF Nos. 12, 13, the Court held a conference on August 22, 2024 and allowed plaintiff to file an amended complaint before D&G USA brought its motion. Plaintiff filed his amended complaint on September 25, 2024. ECF No. 15.

On January 24, 2025, D&G USA submitted its motion to dismiss, ECF No. 27, and memorandum of law, ECF No. 28 ("Def. Br."). Plaintiff opposed this motion on February 14, 2025, ECF No. 32 ("Opp."), and D&G USA replied on February 28, 2025, ECF No. 34 ("Reply").

## **LEGAL STANDARD**

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. A court "must accept as true all factual claims in the complaint and draw all reasonable inferences in the plaintiff's favor." Sacerdote v. Cammack Larhette Advisors, LLC, 939 F.3d 498, 507 (2d Cir. 2019). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## **DISCUSSION**

In the discussion below, we address four issues raised in the parties' briefing, including whether: (1) D&G USA is directly liable for any alleged misconduct; (2) D&G USA is the alter ego of D&G S.R.L.; (3) the amended complaint complies with Rule 8 of the Federal Rules of Civil Procedure; and (4) leave to file a second amended complaint should be granted.

I.    **Direct Liability**

The first issue raised by the parties is whether the amended complaint has adequately alleged D&G USA's direct liability.  In its initial brief, D&G USA recites the elements of plaintiff's twelve causes of action and argues that the amended complaint fails to tie D&G USA to any specific misconduct.  See Def. Br. at 7-17.

Plaintiff's counsel did not respond to this argument.  See Opp.[4]  Plaintiff has thus abandoned this argument and D&G USA's direct liability cannot serve as a basis for denying D&G USA's motion to dismiss.  See Jackson v. Federal Express, 766 F.3d 189, 195—99 (2d Cir. 2014) ("[I]n the case of a counseled  party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); McLeod v. Verizon N.Y., Inc., 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("[C]ourts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." (internal quotations and alterations omitted)); Rowe v. Old Dominion Freight Lines, Inc., No. 21 Civ. 4021 (KMK), 2022 WL 2181619, at *7 (S.D.N.Y. June 16, 2022) (dismissing complaint and

---

[4]    Instead, plaintiff argues that "D&G USA and [D&G] S.R.L. are jointly and severally liable for the actions of the Dolce & Gabbana family company's involvement in the crypto scheme and all claims against D&G USA meet the pleading requirements of Rule 8 as a result."  Opp. 6.  We address plaintiff's group pleading argument in a later section.  Infra pp. 18-20.

finding arguments abandoned where "Plaintiffs choose to dispute some, but not all, of Defendant's arguments").

Moreover, plaintiff's concession is required by law. Because plaintiff has pled no facts as to D&G USA's specific conduct, see AC, the Court cannot "draw the reasonable inference that the [movant] is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.

## II. Alter Ego Liability

We now address the second issue raised by the parties: whether the amended complaint has sufficiently established D&G USA as the alter ego of D&G S.R.L.

Under New York law,[5] "[t]hose seeking to pierce a corporate veil . . . bear a heavy burden." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (1998). To do so, a party must "make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (citation omitted). We review each part in turn.

---

[5]    The Court assumes that New York law applies, as both parties cite to New York law in their briefing. Opp. at 6-7 (citing Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 139 (2d Cir. 1991) which applies New York law); Reply at 4 (expressly citing "New York law").

**a. Complete Domination**

To prove alter ego liability, a party must first establish that "the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." In re 22 Fiske Place, L.L.C., No. 21 Civ. 8087 (KPF), 2022 WL 2819093, at *13 (S.D.N.Y. July 18, 2022) (citations and quotation marks omitted), aff'd, No. 22-1793, 2023 WL 4278189 (2d Cir. June 30, 2023).

A finding of complete domination depends on the following factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm[']s length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used as other of the corporations as if it were its own.

Citibank, N.A. v. Aralpa Holdings Ltd. P'ship, No. 24-423-CV, 2025 WL 289499, at *2–3 (2d Cir. Jan. 24, 2025) (quoting Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d 131, 139 (2d

Cir. 1991)).   Notably, every factor listed above "need not be present and no one factor is decisive" in a court's determination of complete domination.  Id. at *3 (citation omitted).

Plaintiff admits that of "the 10 factors, the Complaint specifically alleges five," arguing that "four of the remaining factors follow naturally from those five" and that the "one remaining factor (corporate funds used for personal use) is irrelevant."  Opp. 8, 8 n.2.  We review each factor in turn.

Plaintiff contends that his amended complaint adequately pleads the existence of the first factor, the absence of the formalities and paraphernalia that are part and parcel of the corporate existence.  See Opp. 9.  However, in his amended complaint, plaintiff merely alleges: "the corporate formalities between Dolce & Gabbana USA Inc. and Dolce & Gabbana S.R.L. are rarely followed, if at all, and the entities only present themselves as 'Dolce & Gabbana' to the public." AC ¶ 33.  Plaintiff cannot rely on this conclusory allegation about common branding because it does not include "specific facts or circumstances as to how [D&G USA] disregarded the corporate form in conducting [D&G S.R.L.'s] business."  In re Ryan, No. 8-19-70203 (LAS), 2022 WL 4486736, at *12 (Bankr. E.D.N.Y. Sept. 27, 2022) (granting dismissal of alter ego theory of liability).

-11-

As for the second factor, inadequate capitalization, plaintiff makes the conclusory allegation that "the capitalization of Dolce & Gabbana USA Inc. is established at the sole direction and whim of Dolce & Gabbana S.R.L." AC ¶ 33. This is similarly insufficient as a matter of law. Plaintiff "must do more tha[n] merely parrot the factors enumerated in the veil-piercing case law." Spagnola v. Chubb Corp., 264 F.R.D. 76, 87 (S.D.N.Y. 2010) (citation omitted).

The third factor, whether funds are put in and taken out of the corporation for personal rather than corporate purposes, is wholly absent from the amended complaint and plaintiff contends that it is "irrelevant" to the case here. Opp. 8 n.2.

Plaintiff's amended complaint addresses, with some detail, the fourth factor: overlap in ownership, officers, directors, and personnel. In the amended complaint, plaintiff alleges that D&G USA and D&G S.R.L. share a Chief Executive Officer, a Chief Operating Officer, a Vice President of Information Technology, and a Marketing Vice President. AC ¶¶ 33, 44. Plaintiff further alleges that "[t]hese individuals from both Dolce & Gabbana entities were involved in managing, marketing, and/or designing various parts of the project turned scheme based on their roles." Id. ¶ 44. Nevertheless, plaintiff fails to provide specific examples, or facts, that support this conclusory allegation.

-12-

Perhaps sensing the futility of his amended complaint, plaintiff provides more factual detail in his opposition. Plaintiff asserts that:

> [T]he Vice President of Information Technology has controlling oversight over both companies' involvement in any sort of tech-based investment or product, including NFTs; the Vice President of Marketing has controlling oversight over the promotion and marketing of that scheme; and the owner, CEO and COO have direct and final controlling oversight over all investments and products promoted or produced by both companies.

Opp. 8. A "[p]laintiff[] cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendant['s] motion to dismiss." K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013); see also Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint." (citation omitted)).[6]

Even if the Court were to find that this factor was satisfied, "overlapping ownership and personnel alone cannot establish an alter ego relationship." Remcoda, LLC v. Ridge Hill Trading (PTY) Ltd., No. 21 Civ. 979 (ER), 2022 WL 603998, at *9 (S.D.N.Y. Mar.

---

[6]    Plaintiff asserts other unpled factual allegations in his opposition. For example, plaintiff's counsel writes "In the roles of CEO, COO, Vice President of Marketing, and Vice President of Information Technology, these employees were deeply involved in the planning and implementation of the NFT scheme." Opp. 11. Even if we assume these unpled allegations are true, these employees did not necessarily act on behalf of D&G USA when "planning and implement[ing] . . . the NFT scheme." Id. The Court does not rely on any unpled factual allegations in deciding the instant motion.

1, 2022) (collecting cases); see also In re Amaranth Nat. Gas
Commodities Litig., 587 F. Supp. 2d 513, 538 (S.D.N.Y. 2008)
("While plaintiffs have alleged common ownership and overlapping
directors, these factors alone are insufficient to support an
extension of liability."), aff'd, 730 F.3d 170 (2d Cir. 2013).
Put simply, this "overlap among personnel is 'commonplace as
generally-accepted corporate form, and [is] insufficient without
more, as a matter of law, to eviscerate the presumption of
corporate separateness.'" Ayco Co., L.P. v. Frisch, No. 11 Civ.
580 (LEK) (DRH), 2012 WL 42134, at *8 (N.D.N.Y. Jan. 9, 2012)
(citation and quotation marks omitted).

Plaintiff contends that his amended complaint establishes the
fifth factor: common office space, address and telephone numbers
of corporate entities. Opp. 9-10. Indeed, the amended complaint
alleges that a D&G S.R.L. employee communicated with investors,
while "operating out of the New York office throughout at least
the relevant period." AC ¶ 44.

The operative pleading obliquely references the sixth factor,
the amount of business discretion displayed by the allegedly
dominated corporation. AC ¶ 33. The amended complaint states
that "Dolce & Gabbana USA Inc. functions at the absolute direction
of Dolce & Gabbana S.R.L." and that "all of the business of Dolce
& Gabbana USA Inc. and Dolce & Gabbana S.R.L. is directed by their

-14-

shared CEO Alfonso Dolce." Id. These conclusory statements, without more, cannot establish liability, as "there must be more than a simple determination that a parent-subsidiary relationship exists before an allegation of alter ego can be alleged." Rayside v. E. Connection Operating, Inc., No. 19 Civ. 1759 (NGG) (CLP), 2020 WL 13826152, at *6 (E.D.N.Y. Feb. 27, 2020).

Plaintiff's amended complaint does not reference the seventh factor, whether the related corporations deal with the dominated corporation at arm's length. Plaintiff's argument that "the sharing of corporate officers . . . calls into question whether the companies negotiate at arm's length" is superficial, Opp. 8, and is not credited by the Court.

Plaintiff admits that the operative pleading does not contain a specific reference to the eighth factor, whether the corporations are treated as independent profit centers. Opp. 9. However, plaintiff contends that "the implication that D&G USA operates its business, including the promotion and implementation of the NFT scheme, at the sole discretion of [D&G] S.R.L." "[f]ollow[s] naturally" from what he has alleged. Id. Again, plaintiff "must allege facts to support its conclusions" and without these facts, plaintiff cannot establish that a company was "dominated." HSM Holdings, LLC v. Mantu I.M. Mobile Ltd., No. 20 Civ. 967 (LJL), 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021).

-15-

The ninth factor, the payment or guarantee of debts of the dominated corporation by other corporations in the group, is not referenced in plaintiff's amended complaint or plaintiff's opposition.  See generally AC; Opp.

Plaintiff relies on the same allegations concerning the shared New York office to establish the tenth factor, whether the corporation in question had property that was used by other of the corporations as if it were its own.  Opp. 9 (citations omitted).

On balance, the Court finds that plaintiff has not adequately alleged that D&G S.R.L. completely dominated D&G USA even if D&G S.R.L. allegedly shared some employees and office space with D&G USA.  In other words, "[a]lthough Plaintiff[] ha[s] alleged facts to suggest some overlap between the operations of [D&G S.R.L.] and [D&G USA], this overlap is not unusual and Plaintiff['s] allegations do not rise to the level that indicates the kind of complete domination and control that is required under the first prong of the alter-ego analysis."  Spagnola, 264 F.R.D. at 87.

**b. Use of Domination to Commit a Fraud or Wrong**

Even if we were to assume arguendo that complete domination was present, plaintiff has failed to plead that such domination resulted in a wrong or fraud.

Alter ego liability "requires more than conclusory allegations of control; the party . . . must plead sufficient

'factual allegations to establish that [the parent]'s domination of [the alleged alter ego] was the means by which a wrong was done to plaintiff.'" Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co., No. 13 Civ. 7639 (LTS) (MHD), 2015 WL 4040882, at *6 (S.D.N.Y. July 2, 2015) (citation omitted).

Plaintiff's amended complaint does not satisfy this test. At most, plaintiff's amended complaint alleges that officers of D&G USA and D&G S.R.L. "were involved in managing, marketing, and/or designing various parts of the project turned scheme based on their roles." AC ¶ 44. This conclusory allegation does not establish "any facts suggesting [D&G S.R.L.] dominated or undercapitalized [D&G USA] for the purpose of defrauding plaintiff." Vance Bioenergy Sdn. Bhd. v. World Energy Alternatives, LLC, No. 08 Civ. 9330 (LAK), 2010 WL 11595107, at *2 (S.D.N.Y. Jan. 19, 2010) (citation omitted).

Plaintiff's opposition misunderstands the second prong of the alter ego analysis. There, plaintiff recites the allegations underlying his twelve causes of action and argues that this recital sufficiently establishes a wrong or fraud. See Opp. 10-13. However, that is not the required test. As Judge Rakoff of this District helpfully stated: "Logically, the fraud or wrong that a party must show when trying to pierce the veil must be independent from the wrongs that it seeks to remedy in the underlying causes

of action.    Otherwise, upon a showing of domination, the mere existence of valid causes of action would usurp the entire second prong of the analysis." <u>Ebin v. Kangadis Fam. Mgmt. LLC</u>, No. 14 Civ. 1324 (JSR), 2014 WL 12936364, at *3 (S.D.N.Y. Dec. 1, 2014). Plaintiff's assertion of alter ego liability thus fails.[7]

## III. Rule 8 Pleading Standards

The Court now turns to the third issue raised by the parties: whether the amended complaint complies with Rule 8 of the Federal Rules of Civil Procedure.

A complaint violates Rule 8 if it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." <u>Atuahene v. City of Hartford</u>, 10 F. App'x 33, 34 (2d Cir. 2001).  "Such a deficient pleading is called improper 'group pleading.'" <u>Plusgrade L.P. v. Endava Inc.</u>, No. 21 Civ. 1530 (MKV), 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023); <u>see also</u> <u>Canon U.S.A., Inc. v. F & E Trading LLC</u>, No. 2:15-CV-6015 (DRH)(AYS), 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." (citation omitted)); <u>Zalewski v. T.P. Builders, Inc.</u>, No. 10 Civ. 876 (GLS) (RFT), 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) ("The court

---

[7]    The same end result applies if we consider the theory that D&G S.R.L. is the alter-ego of D&G USA.  <u>See</u> ECF No. 33 at 2 (plaintiff asserting in a letter that "D&G USA and Dolce & Gabbana S.R.L. operated as alter egos.").

will not accept conclusory allegations, conjecture, or vague group pleading to serve as a basis for liability.").

"Group pleading, by which allegations are made against families of affiliated entities is simply insufficient to withstand review on a motion to dismiss." Concord Assocs., L.P. v. Ent. Props. Tr., No. 12 Civ. 1667 (ER), 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014) (collecting cases), aff'd, 817 F.3d 46 (2d Cir. 2016); see also Nesbeth v. New York City Mgmt. LLC, No. 17 Civ. 8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) ("That separate legal entities might share a corporate affiliation does not alter the requirement of pleading in a manner that provides fair notice to each defendant of the claims against it." (citation omitted)).

Plaintiff's amended complaint is plainly insufficient to withstand D&G USA's motion to dismiss.  The operative pleading refers to both D&G USA and D&G S.R.L. as "Dolce & Gabbana" and attributes all misconduct to this shared moniker, without differentiating what each entity did.  See AC.  While plaintiff is correct that Rule 8 does not prohibit a complaint from "'collectively referring to multiple defendants'" and does not require "details with regard to each defendant," when "a complaint 'alleges joint activity amongst the [defendants],'" Opp. 5 (citations omitted), a plaintiff must still specify "what conduct

-19-

[a defendant] is alleged to have performed and, thus, against which allegations it must defend," Plusgrade, 2023 WL 2402879, at *6 (citation omitted).  Plaintiff has not done so in his operative pleading, thereby warranting dismissal of his claims as to D&G USA.[8]

Indeed, this case calls to mind a recent decision by Judge Kaplan of this District and affirmed by the Second Circuit.  In that putative class action, plaintiffs brought a bevy of claims against various entities associated with the Bank of China, among other defendants.  See S.G. v. Bank of China Ltd., No. 23 Civ. 2866 (LAK), 2024 WL 1861158, at *1 (S.D.N.Y. Apr. 29, 2024), aff'd sub nom. S.G. v. Bank of China U.S.A., No. 24-1426, 2024 WL 4891390 (2d Cir. Nov. 26, 2024).  Like the plaintiff here, plaintiffs there made allegations against "BOC Group," a term defined "to include four different [Bank of China]-affiliated entities" and "fail[ed] to specify which [corporate] entity was responsible for what conduct."  Id. at *2, 3.  As a result, Judge Kaplan found that the "complaint fails to state a claim upon which relief can be granted against" certain Bank of China-affiliated entities.  Id. at *3.  The same result applies here.[9]

---

[8]    Plaintiff is simply wrong that the "Complaint details the various interplay [sic] between Defendants and describes the roles that each took in the scheme."  Opp. 11.

[9]    Similarly, to satisfy the requirements of Rule 9 of the Federal Rules of Civil Procedure, a claim sounding in fraud against multiple defendants must be

## IV.  Leave to Amend Complaint

Lastly, plaintiff requests leave to amend his amended complaint "[s]hould the Court find any cause of action pled by Plaintiff is lacking" because "the issues set forth by Defendant's Motion can be cured upon adding further factual basis to the Complaint." Opp. 14-15.

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam).

Plaintiff was afforded an opportunity to amend his initial complaint, with full knowledge of D&G USA's view of the defects in the pleading.  In July of 2024, D&G USA submitted a pre-motion letter outlining the bases for a motion to dismiss.  ECF No. 12.

---

"ple[d] with particularity by setting forth separately the acts complained of by each defendant." Ningbo Prods. Imp. & Exp. Co. v. Eliau, No. 11 Civ. 650 (PKC), 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011) (citations and quotation marks omitted) (emphasis in original).  Plaintiff's amended complaint includes claims sounding in fraud, meaning that plaintiff's group pleading runs afoul of Rule 9 as well.

Plaintiff responded, opposing D&G USA's letter and requesting jurisdictional discovery. ECF No. 13. The Court held a pre-motion conference in August 2024, in which it rejected plaintiff's request, notified plaintiff that he had an obligation to plead the connection between D&G USA and the alleged misconduct before obtaining any discovery, and granted plaintiff the opportunity to amend his complaint before briefing on the proposed motion began. Plaintiff took advantage of that opportunity and filed an amended complaint. See AC.

Plaintiff has also failed to explain how a second amended complaint would be productive. For example, the new allegations regarding veil piercing that plaintiff includes in its opposition brief "merely parrot the factors enumerated in the veil-piercing case law," Spagnola, 264 F.R.D. 87 (citation omitted), instead of providing the factual allegations needed to support such a claim. We thus have no reason to believe that another amended complaint will be well-pled.

Therefore, denial of plaintiff's request is more than appropriate. See Food Holdings Ltd. v. Bank of Am. Corp., 423 Fed. App'x 73, 76 (2d Cir. 2011) (summary order) (affirming district court's denial of leave to amend where plaintiff requested leave to amend "on the final page of their brief . . . in boilerplate language and without any explanation as to why leave

-22-

to amend was warranted"); <u>Nat'l Credit Union Admin. Bd. v. U.S.</u>
<u>Bank Nat'l Ass'n</u>, 898 F.3d 243, 257 (2d Cir. 2018) ("When a
plaintiff was aware of the deficiencies in his complaint when he
first amended, he clearly has no right to a second amendment even
if the proposed second amended complaint in fact cures the defects
of the first." (citations, quotations and alterations omitted));
<u>Twohig v. Shop-Rite Supermarkets, Inc.</u>, 519 F. Supp. 3d 154, 168
(S.D.N.Y. 2021) (denying leave to amend where "[p]laintiffs have
already amended once, after having the benefit of a pre-motion
letter from Defendant stating the grounds on which they would move
to dismiss"); <u>NRW, Inc. v. Bindra</u>, No. 12 Civ. 8555 (RJS), 2015 WL
3763852, at *1 (S.D.N.Y. June 16, 2015) ("To grant leave to amend
after a plaintiff has had ample opportunity to amend would be
condoning a strategy whereby plaintiffs hedge their bets . . . in
the hopes of having another bite at the proverbial apple."
(citation and quotation marks omitted)).

## CONCLUSION[10]

For the foregoing reasons, D&G USA's motion is granted.  The Clerk of the Court is directed to terminate the motion pending at ECF No. 27.

Dated:    July 11, 2025
          New York, New York

_____
         NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[10]    The Court understands that D&G USA requested oral argument.  ECF No. 27. However, given that our holding is based on clear legal doctrine, the Court determined that oral argument would not be productive.